IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LOREN CHRISTOPHER TARABOCHIA, | ) | Civil No. 03-416-JE |
| | ) | |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION/ |
| | ) | ORDER |
| CLATSOP COUNTY SHERIFF'S DEPT., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Loren Tarabochia
#10072765
777 Stanton Blvd.
Ontario, OR 97914
       Plaintiff Pro Se

James P. Martin
Kari A. Furnanz
Hoffman, Hart & Wagner, LLP
Twentieth Floor
1000 S.W. Broadway
Portland, OR 97205
       Attorneys for Clatsop County Defendants

1 - FINDINGS AND RECOMMENDATION/ORDER

Hardy Myers
Attorney General
Leonard W. Williamson
Senior Asst. Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
        Attorneys for Defendant Josh Marquis

JELDERKS, Magistrate Judge:

Pro se plaintiff Loren Christopher Tarabochia brings this civil rights action against Clatsop County, Oregon; County employees who worked at the Clatsop County Correctional Facility (the Jail), in Astoria; and Josh Marquis, District Attorney for Clatsop County.  Marquis and the County defendants move for summary judgment.  Plaintiff also moves for summary judgment.

I recommend granting Marquis's motion for summary judgment.  I recommend granting the County defendants' motion for summary judgment except as to the Jail's alleged return of plaintiff's incoming mail, ban on periodicals, and alleged denial of outdoor exercise.  I recommend granting plaintiff's motion for summary judgment as to the periodical ban and otherwise denying it.

Plaintiff's motions for sanctions, to strike, and to reconsider are denied.  The County defendants' motion to strike is denied.

## BACKGROUND

Plaintiff was detained at the Jail from July 17, 2002, to May 13, 2003, for a total of about thirty weeks.[1] Two criminal prosecutions were pending against plaintiff during this time.

Plaintiff alleges that defendants improperly restricted his access to the courts. Plaintiff also alleges that defendants returned mail improperly, subjected him to intolerable conditions, and disciplined him without due process and in retaliation for exercising his constitutional rights.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc.

---

[1]Plaintiff was housed in a Tillamook County facility during September and November 2002. Furnanz Aff., Ex. B, at 2. Plaintiff is now in the Snake River Correctional Institution, Ontario, Oregon.

v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of an issue of material fact against the moving party. Id. at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. Id. at 630-31.

## DISCUSSION

### I. Denial of Access to the Courts

Plaintiff's claims for denial of access to the courts concern two legal proceedings: a civil rights action regarding incidents at the Eastern Oregon Correctional Institution (EOCI), which plaintiff litigated in this court, Tarabochia v. Hill, Civ. No. 01-920-ST, 2002 WL 31548490 (D. Or. May 13, 2002); and a state criminal prosecution of plaintiff, in which plaintiff represented himself.

The Jail has no law library, although it has a copy of the Oregon Revised Statutes available for inmates. The Jail allows inmates, with supervision, to use a law library in the courthouse across the street. If the Jail determines that an inmate poses a safety risk, the inmate may request specific legal materials from a corrections officer, who then brings the materials to the inmate.

## A. The Civil Rights Action

### 1. Background

Plaintiff filed his earlier civil rights action in June 2001. He alleged that while he was incarcerated at EOCI, prison officials punished him for statements he made in a grievance form, violating his First Amendment rights. He also alleged that prison officials retaliated against him for filing a grievance.

The parties moved for summary judgment. In June 2002, another judge on this court granted plaintiff's motion for summary judgment on the First Amendment claim and granted the defendants' motion for summary judgment on the retaliation claim.

In July 2002, plaintiff began his detention at the Jail. From July 2002 until January 2003, there was no activity in the earlier civil rights action. On January 21, 2003, a minute order was entered in that action requiring that the parties submit proposed forms of judgment. On February 3, 2003, the minute order mailed to plaintiff was returned to this court as undeliverable. On February 4, 2003, this court re-sent the minute order. Plaintiff apparently received the minute order, because on February 25, 2003, this court filed plaintiff's proposed form of judgment. On March 24, 2003, this court filed plaintiff's objections to defendants'

proposed form of judgment. On June 19, 2003, judgment was entered in plaintiff's favor, awarding damages of $750.[2]

## 2. Standards

Prison authorities must provide prisoners with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access to the courts requires only that prisoners have "the minimal help necessary" to file legal claims. Id. at 360. There is no freestanding right to a law library or legal assistance. Id. at 351.

To establish a claim for denial of access to the courts, the plaintiff must allege an actual injury. Id. An actual injury means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Id. at 348. There is no actual injury if the prisoner retains the ability to present his arguments to the court. Thompson v. Lampert, Civ. No. 02-135-HU, 2004 WL 1673102, at *18 (D. Or. July 27, 2004) (Findings and Recommendation), adopted, 2004 WL 2059523 (D. Or. Sept. 14, 2004).

---

[2]This judgment is currently on appeal, Ninth Circuit docket No. 03-35600.

proposed form of judgment. On June 19, 2003, judgment was entered in plaintiff's favor, awarding damages of $750.[2]

## 2. Standards

Prison authorities must provide prisoners with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access to the courts requires only that prisoners have "the minimal help necessary" to file legal claims. Id. at 360. There is no freestanding right to a law library or legal assistance. Id. at 351.

To establish a claim for denial of access to the courts, the plaintiff must allege an actual injury. Id. An actual injury means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Id. at 348. There is no actual injury if the prisoner retains the ability to present his arguments to the court. Thompson v. Lampert, Civ. No. 02-135-HU, 2004 WL 1673102, at *18 (D. Or. July 27, 2004) (Findings and Recommendation), adopted, 2004 WL 2059523 (D. Or. Sept. 14, 2004).

---

[2]This judgment is currently on appeal, Ninth Circuit docket No. 03-35600.

### 3. Discussion

Plaintiff has failed to show that the alleged denial of access caused any actual injury in the earlier civil rights action. This is especially true considering that plaintiff prevailed on one of his claims in that action and was awarded damages. By July 2002, when plaintiff began his detention at the Jail, that case was essentially complete, with liability determined and only the entry of judgment remaining.

As plaintiff notes, a minute order mailed to him was returned as undeliverable. However, this court re-sent the minute order and plaintiff was able to file a timely proposed judgment.

### B. The Criminal Prosecution

#### 1. Background

On July 18, 2002, plaintiff was initially arraigned in Clatsop County Circuit Court on criminal charges and detained in the Jail. Stevens Aff., Ex. B, at 1 (plaintiff's Inmate Status Chart). On July 25, 2002, plaintiff was arraigned on about thirty criminal charges, including nine counts of burglary, five counts of theft, one count of possession of burglary tools, two counts of unauthorized use of a motor vehicle, and several counts of criminal mischief. Id.

On July 30, 2002, plaintiff discharged his court-appointed attorney and chose to defend himself. The trial

court appointed a second attorney to represent plaintiff, but as of December 2002, plaintiff again chose to represent himself.

On February 5, 2003, a jury found plaintiff guilty on all counts. Plaintiff was sentenced on May 8, 2003.[3]

## 2. Discussion

"An incarcerated criminal defendant who chooses to represent himself has a constitutional right to access to 'law books . . . or other tools' to assist him in preparing a defense." Bribiesca v. Galaza, 215 F.3d 1015, 1020 (9th Cir. 2000) (citing Milton v. Morris, 767 F.2d 1443, 1446 (9th Cir. 1985)). Plaintiff contends that because he was a pretrial detainee defending himself from criminal charges, the standards for access to the courts set by Lewis do not apply. Plaintiff cites Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001), which held that pretrial detainees need not show actual injury in an action challenging prison restrictions on attorneys' visits. I have not found Ninth Circuit authority on point. Cf. Demeter v. Buskirk, 2003 WL 22416045, at *3 (E.D. Pa. Oct. 20, 2003) ("Whether Plaintiff's status as a pretrial detainee broadens the scope of actionable claims

---

[3]The record is unclear on the length of the final sentence because it does not indicate whether the sentences were consecutive or concurrent. See Furnanz Aff., Ex. B., at 6.

under the right of access to the courts is unclear, as no court has squarely addressed the issue.").

However, I need not resolve whether a pretrial detainee must show actual injury. Plaintiff's access to the courts claim as to the criminal prosecution must be dismissed without prejudice because the claim attacks the fairness of his trial, which necessarily implies that his convictions are invalid. See Valdez v. Rosenbaum, 302 F.3d 1039, 1049 (9th Cir. 2002) (pretrial detainee's civil rights claim that prison telephone rules prevented him from talking to his attorney could not be brought as a civil rights action under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)); cf. Bribiesca, 215 F.3d at 1020 (prisoner's claim that he was denied access to the courts while representing himself at trial was "an independent basis for [habeas corpus] relief"). Plaintiff may not bring this access to the courts claim under 42 U.S.C. § 1983 until he shows that his convictions were reversed or otherwise overturned. See Heck, 512 U.S. at 486-87. Plaintiff's access to the court claim regarding his criminal trial should be dismissed without prejudice.

## II.  The Jail's Ban on Magazines

### A.  Background

Plaintiff asked Jail staff about receiving by subscription the magazines Mustang and Fast Fords, 5.0, 4

<u>Wheeler</u>, and <u>Backwoods Home</u>. Plaintiff states that he was told that the Jail's rules prohibited inmates from receiving magazines by subscription, and that the Jail required that books and magazines received by inmates be donated to the Jail's library. The Jail's rule for incoming personal mail includes a blanket prohibition on periodicals:

> **ALL INCOMING MAIL WILL BE OPENED AND INSPECTED FOR CONTRABAND, MONIES, AND PROHIBITED PUBLICATIONS.** Pictures not larger than 4x6 inches may be allowed <u>UNLESS THEY ARE POLAROID TYPE WITH INSTANT BACKING</u> they are not allowed. Pictures of this type will be placed in your property and held until your release, or sent back to the sender.
>
> It is your responsibility to turn over the excess mail to the staff, who will then place the extras in your personal property locker. Publications or periodicals are not accepted.
>
> ***Mail with stickers will be returned to the sender.***

Stevens Aff., Ex. A, at 8 (emphasis in original). The Jail also prohibits inmates from keeping magazines in their cells:

"**NO MAGAZINES OR HARDBACK BOOKS (INCLUDING LAW BOOKS) WILL BE ALLOWED IN THE CELL BLOCK AREAS.** You are allowed <u>three (3) paperback books per inmate excluding AA books and a Bible</u>." <u>Id.</u> at 13 (emphasis in original).

### B. Discussion

"Publishers have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail." <u>Prison Legal News v. Lehman</u>, 397

F.3d 692, 699 (9th Cir. 2005) (citation omitted). "But this right is subject to 'substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security.'" Id. (quoting Walker v. Sumner, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted).

For the Jail's ban on periodicals to be upheld, it must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). To determine whether a prison regulation is "reasonably related to legitimate penological interests," the court should consider "(1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open to the inmates to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials." Prison Legal News, 397 F.3d at 699 (citations omitted). If a prison regulation is not rationally related to a legitimate and neutral governmental objective, the court need not consider the other three Turner v. Safley factors. Id.

Here, defendants have not submitted any rationale for the Jail's categorical ban on receiving "publications and periodicals," or for the Jail's prohibition on keeping magazines in cells. The Ninth Circuit has held that similar categorical bans violated inmates' First Amendment rights. See, e.g., Morrison v. Hall, 261 F.3d 896, 904 (9th Cir. 2001) (ban on subscription for-profit bulk mail held unconstitutional); Prison Legal News, 397 F.3d at 699-701 (rejecting justifications for prison's ban on bulk mail and catalogs; justifications included reducing volume of mail to help searches for contraband and to ease staff workload, and reducing clutter to lessen risk of fire and to make searches of cells easier and more effective). There is no evidence that the magazines in question could be considered disruptive or inflammatory. Cf. Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999) (en banc) (policy prohibiting inmates from possessing material showing frontal nudity was valid restraint on First Amendment rights, in part because it related to legitimate penological interests such as rehabilitating inmates, maintaining jail security, and preventing sexual harassment of female guards); Haff v. Cooke, 923 F. Supp. 1104, 1112 (E.D. Wis. 1996) (prison could prohibit inmate from possessing Aryan Nation literature because of potential to incite violence).

Lacking any justification for the ban from defendants, I am compelled to conclude that the Jail's prohibition against receiving periodicals by mail violated plaintiff's First Amendment rights, and that plaintiff's motion for summary judgment therefore should be granted as to this claim. Because the prohibition is an official policy of the Jail, the County should be liable. See McMillian v. Monroe County, 520 U.S. 781, 784 (1997) ("a local government is liable under § 1983 for its policies that cause constitutional torts"). None of the individual defendants should be liable because plaintiff has not presented evidence that any particular defendant enforced the ban.

## III. Conditions at the Jail

### A. Standards

#### 1. Rights as a Pretrial Detainee

From July 17, 2002, when plaintiff was arraigned, to February 5, 2003, plaintiff was a pretrial detainee. "Pretrial detainees have a substantive due process right against restrictions that amount to punishment." Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (citations omitted). Although prison authorities may not impose restrictions with the intent to punish a pretrial detainee, authorities may impose restrictions on detainees that are incident to a legitimate government purpose. Id.

"In distinguishing between a permissible restriction and impermissible punishment, [the court] first examine[s] whether the restriction is based upon an express intent to inflict punishment." Id. (citation omitted). If there is no express intent to punish, the court then considers "whether punitive intent can be inferred from the nature of the restriction." Id. "'[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."'" Id. at 1045-46 (quoting Bell v. Wolfish, 441 U.S. 520, 539 (1979)).

## 2. Rights After Guilty Verdict

After the guilty verdict on February 5, 2003, plaintiff was no longer a pretrial detainee but a guilty defendant awaiting sentencing. Plaintiff was then subject to the same legal strictures that apply to convicted prison inmates. See Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (rights of guilty but not yet sentenced inmate governed by Sandin v. Conner, 515 U.S. 472 (1995)).

"Under Sandin, a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin, 515 U.S. at 484). To show a protected

liberty interest, plaintiff must show that "his confinement, whether administrative or disciplinary, presented 'the type of atypical, significant deprivation [that] might conceivably create a liberty interest.'" Id. (quoting Sandin, 515 U.S. at 486). In Sandin, the Court considered three factors in concluding that the inmate had no liberty interest in avoiding disciplinary segregation: "(1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no 'major disruption in his environment'; and (3) the length of the plaintiff's sentence was not affected." Id. (citing Sandin, 515 U.S. at 486-87).

## A. Denial of Outdoor Exercise

### 1. Background

Plaintiff states that he was given access to outdoor recreation "for about 30 minutes every 2 weeks in Summer and 30 minutes every 3 1/2 weeks in Winter." Pltf.'s Aff. at 23. Plaintiff states that lack of outdoor exercise caused him to gain weight, become depressed, and to suffer sores and acne. Plaintiff has not submitted extrinsic evidence of his alleged physical symptoms, such as medical chart notes.

In a grievance written in mid-February 2003, plaintiff admitted that "two or three" times he did not use

opportunities to exercise outdoors "because [he] was busy
getting ready for trial." Furnanz Aff., Ex. C, at 25. In
response to that grievance, defendant Lt. Ronald J. Stevens
stated,

> When we have taken your cellblock up to the roof, it
> was up to you if you wanted to go or stay in your
> cell to work on your legal work. We are not going
> to take you up by yourself because you were busy.
> We can only get inmates to the roof when the weather
> is good and when we have staff.

Furnanz Aff., Ex. C, at 16.

Plaintiff states that he was denied all outdoor exercise
while he was in segregation from March 18 to May 13, 2003,
for assaulting a corrections officer. He states that he was
permitted one hour or less per day out of the cell for
showering and recreation, in a shower area about fifteen feet
square.

## 2. Discussion

Eighth Amendment claims of inhumane prison conditions
must meet both an objective and a subjective requirement.
Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994). "Under
the objective requirement, the prison officials' acts or
omissions must deprive an inmate of 'the minimal civilized
measure of life's necessities.' The subjective requirement,
relating to the defendant's state of mind, requires deliberate
indifference." Id. (quoting Farmer v. Brennan, 511 U.S. 825,
834 (1994), and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

16 - FINDINGS AND RECOMMENDATION/ORDER

"Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), amended on other grounds, 135 F.3d 1318 (9th Cir. 1998). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997).

I conclude that defendants are entitled to summary judgment on plaintiff's outdoor exercise claim as to the period from July 2002 to March 2003. By his own admission, plaintiff failed to take advantage of opportunities to exercise outdoors.

The alleged complete denial of outdoor exercise for seven weeks presents a different question. In Lopez v. Smith, the Ninth Circuit sitting en banc held that the alleged deprivation of all outdoor exercise for six and one-half weeks was sufficient to survive summary judgment, even without a showing of adverse medical effects. 203 F.3d 1122, 1132-33 & n.15 (9th Cir. 2000) (en banc). In Allen, the Ninth Circuit held that the alleged segregation of an inmate for six weeks with forty-five minutes of outdoor recreation per week was sufficient to survive summary judgment. 48 F.3d at 1087-88.

In Allen, the court distinguished decisions in which the denial of outdoor recreation was justified because the inmates

in question had assaulted or killed guards.  _Id._  Here, plaintiff was in segregation for assaulting a corrections officer, pushing her hard enough to cause her to fall. However, defendants have not contended that the alleged denial of outdoor exercise was based on plaintiff's dangerousness.

Plaintiff states that he received one hour or less per day to shower and exercise in a fifteen-square-foot shower area.  I cannot conclude as a matter of law that this amount of indoor exercise is sufficient to compensate for the alleged denial of all outdoor exercise.  _Cf._ _Acree v. Peterson_, Civ. No. 99-1085-KI, 2000 WL 1141587, at *2-3 (D. Or. Aug. 1, 2000) (granting summary judgment against inmate who was allegedly denied all outdoor exercise for 9 months, but who had access to a day room for 19 hours per day, except for 4 weeks when he was in lockdown with 1 hour of exercise per day).

Defendants have not disputed plaintiff's statement that he was denied all outdoor exercise during his seven weeks in segregation.  Plaintiff alleges that the denial of outdoor exercise was an official policy and custom of Clatsop County. In light of _Lopez_ and _Allen_, I conclude that Clatsop County should not be granted summary judgment on the denial of outdoor exercise claim as to plaintiff's segregation from March to May 2003.

Plaintiff alleges that Lt. Ron Stevens, allegedly the officer in charge of the Jail, should also be liable on the denial of exercise claim. Plaintiff states that Stevens is personally liable because "official policy and custom caused these injuries." Pltf.'s Aff. of Personal Participation, at 5.

For Stevens to be liable, plaintiff must present evidence that Stevens personally participated in the alleged constitutional violation. Ortez v. Washington County, 88 F.3d 804, 809 (9th Cir. 1996). "A supervisor is liable for the constitutional violations of his or her subordinates only if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Thompson, 2004 WL 1673102, at *3 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). I recommend that Stevens be dismissed as a defendant because there is no evidence that he personally participated in the alleged constitutional violation.

### B. Loud Door Mechanism

Plaintiff complains that for ten days in segregation, he was subjected to loud noises caused by an electric door-locking mechanism. Plaintiff states his cell's bed was against a wall adjacent to the door locks. He states the locks were triggered whenever an officer left the control room

or booking area, allegedly more than 200 times per day. Plaintiff states that he could not sleep and that he suffered migraine headaches because of the noise.

The Eighth Amendment requires that inmates be housed in an environment that is "reasonably free of excess noise." Keenan, 83 F.3d at 1090) (citation omitted). I recommend granting defendants' motion for summary judgment as to this claim. Given the length of time plaintiff was allegedly subjected to the loud locking mechanism, plaintiff has not presented evidence sufficient to state a claim under the Eighth Amendment.

### C. "On the Spot" Discipline

Plaintiff states that on February 12, 2003, he received an "on-the-spot write-up" that was not appealable. Plaintiff states that the write-up resulted in six days of segregation, along with loss of library, telephone, and visitation privileges. Plaintiff provides his own description of the events leading to the write-up, but the write-up itself is apparently not in the record.

To show a protected liberty interest, plaintiff must show that "his confinement, whether administrative or disciplinary, presented 'the type of atypical, significant deprivation [that] might conceivably create a liberty interest.'" Resnick, 213 F.3d at 448 (quoting Sandin, 515 U.S. at 486).

Here, given the relatively minor nature of sanction against plaintiff, I conclude that plaintiff has not shown that he had a liberty interest at stake. I recommend ruling that plaintiff has not shown a due process violation based on defendants' use of on-the-spot discipline.

### D. Mail Claim

Plaintiff claims that from July 2002 to May 2003, defendants returned mail addressed to him from this court, as well as mail forwarded to him by an acquaintance, which included personal and legal letters. Plaintiff alleges that he received no notice of the alleged return of the mail.

Plaintiff has a due process liberty interest in receiving incoming mail, which includes the right to be notified that prison authorities are withholding mail. <u>Krug v. Lutz</u>, 329 F.3d 692, 697-98 (9th Cir. 2003); <u>Frost v. Symington</u>, 197 F.3d 348, 353 (9th Cir. 1999). "[W]ithholding delivery of inmate mail must be accompanied by . . . minimum procedural safeguards," including notice and administrative review. <u>Krug</u>, 329 F.3d at 697-98.

Defendants have not presented evidence that they notified plaintiff that they were withholding mail, or that they allowed administrative review. Although defendants contend that they are entitled to summary judgment because plaintiff has not shown any actual injury, I agree with plaintiff that

the Ninth Circuit has not required a showing of actual injury when an inmate alleges mail was withheld without due process. See id. I recommend denying the County defendants' motion for summary judgment as to plaintiff's mail claim. Because plaintiff alleges that the withholding was based on official policy and custom, but does not name any individual defendants as responsible, only Clatsop County would be liable if plaintiff ultimately prevails on this claim.

### E. Telephone Claim

Plaintiff alleges that defendants denied him telephone privileges at various times during his detention, including while he was in segregation.

Inmates have a First Amendment right "to communicate with persons outside prison walls. Use of a telephone provides a means of exercising this right." Valdez, 302 F.3d at 1048 (emphasis in original). Here, plaintiff generally had alternative means of communicating with family, friends, or attorneys, although those means were restricted when plaintiff was in segregation. I recommend granting defendants' motion for summary judgment as to plaintiff's telephone claim.

### F. Due Process Claims: Notice and Bias

Plaintiff claims that he was disciplined for violating a rule that did not give him fair notice, and that a corrections officer who presided over a hearing was biased against him.

### 1. Fair Notice

Plaintiff was disciplined for failing to comply with the Jail's sanitary regulations on February 12, 2003. According to plaintiff, he was reading a newspaper and failed to help other inmates clean the cell block. Plaintiff states that he was not needed to help with clean-up.

"It is clearly established, both by common sense and precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996). I conclude that here, plaintiff received adequate notice.

The Jail's rules forbid any violation of sanitary regulations, and plaintiff by his own admission did not help clean the cell block, although he claims that he was not required to do so. The Jail's rules gave plaintiff adequate notice under the circumstances.

### 2. Bias

After a hearing on March 22, 2003, before corrections officer Rich Moyer, plaintiff was found guilty of violating rules against disrespect, assault, disruptive behavior, and touching or striking staff. Plaintiff pleaded guilty to disrespect and to touching or striking corrections officer Patty Davis on March 18, 2003, but he disputed the other two charges.

An inmate's right to due process regarding disciplinary hearings is satisfied by advance written notice of the disciplinary charges, an opportunity to call witnesses, a written statement by the hearings officer, fair treatment by the hearings officer, and findings supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)).

When there are relatively few inmates in a jail, corrections officers will inevitably become acquainted with most of the inmates. However, regardless of Moyer's attitude towards plaintiff, there is no evidence in the transcript of the hearing or in the written findings of fact that Moyer's ultimate conclusions were not based on evidence in the record. Plaintiff admitted that he had cursed at Davis and then pushed her. Although plaintiff testified that Davis fell because she tripped, Moyer could have believed Davis's statement that plaintiff pushed her hard enough to cause her to fall to the floor. Moyer interviewed other witnesses to the event and allowed plaintiff to testify at the hearing.

Even if there was a due process violation, Moyer would be entitled to qualified immunity. See, e.g., Ruley v. Nevada Bd. of Prison Comm'rs, 628 F. Supp. 108, 112 (D. Nev. 1986) (prisoner's due process claim requires "[a] substantial

showing of bias").  Defendants are entitled to summary
judgment on plaintiff's procedural due process claims for lack
of notice and bias.

## IV.  Retaliation Claim

Plaintiff claims that defendants retaliated against him
"mainly based on their resentment of my complaining about the
law library."  Pltf.'s Aff. at 25.  Plaintiff states that
Jail staff told him to stop complaining and that he would be
"put . . . where you can't complain."  Id.  Plaintiff states
that he received three write-ups during his ten months in the
Jail, which he claims were retaliation for his complaints
about access to the courts.

Plaintiff must show that defendants retaliated against
him for exercising a constitutional right and that the alleged
retaliatory action did not advance legitimate penological
goals or was not narrowly tailored to achieve such goals.
Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997).  A prisoner
may base a retaliation claim "on harms that would not raise
due process concerns."  Resnick, 213 F.3d at 449 (citing
Hines, 108 F.3d at 269).

The record shows that the three write-ups plaintiff
received did advance legitimate penological goals and were
reasonably based on plaintiff's conduct, which included
assaulting a corrections officer.  The decision to shackle

plaintiff when escorting him to the law library was properly based on an evaluation of plaintiff's security risk, an evaluation courts should be very reluctant to second-guess. Defendants are entitled to summary judgment on plaintiff's retaliation claim.

## V.   Claim Against the District Attorney

### A.   Background

Plaintiff brings a claim against Josh Marquis, District Attorney for Clatsop County, alleging that Marquis "personally provided legal advise [sic] to Jail personnel, to refuse me access to the law library."  Plaintiff relies on a statement made by Moyer during the March 22, 2003 disciplinary proceeding against plaintiff:  "I just talked to the D.A. again the other day and we are not required" to make photocopies for plaintiff's civil actions.  Marquis Ex. 102, at 15 (transcript of disciplinary hearing).

Marquis has been the District Attorney for Clatsop County since March 1994.  He does not recall talking to Moyer about plaintiff or any issues concerning plaintiff.  Marquis states that he could not have met with Moyer between March 18 and 22, 2003, because he was at a meeting outside the state.

Marquis also states that he is employed by the State of Oregon, not Clatsop County, and that he does not supervise or

give legal advice to Jail staff.  He would have referred questions about inmates' rights to the Clatsop County Counsel.

**B.  Discussion**

Plaintiff relies on Moyer's statement that Moyer had talked to the "D.A." (otherwise unnamed) about plaintiff's access to the courts.  However, Marquis states that he does not recall giving Moyer legal advice; that he was out of state during the time in question; and that he would have referred such questions to County Counsel.  Plaintiff has failed to present evidence that Marquis was personally responsible for the alleged advice.

Even if Marquis had given the alleged advice, plaintiff cannot show that he was injured by it.  By late March 2003, when the alleged statement was made, plaintiff's earlier action in this court was almost completed, requiring only the entry of judgment in plaintiff's favor.  Marquis is entitled to summary judgment.

**CONCLUSION**

Plaintiff's motion for summary judgment (71) should be granted as to the Jail's prohibition against periodicals (claim 6) and otherwise denied.  Plaintiff's motion for sanctions (79), to compel (63), to reconsider (64), to strike (69), and "of Prejudice" (100), are denied.  Defendant Marquis's motion for summary judgment (59) should be granted.

The County defendants' motion for summary judgment (31) should be granted except as to the Jail's alleged withholding of mail (claim 2), prohibition against periodicals (claim 6), and alleged denial of outdoor exercise (claim 10). The County defendants' motion to strike (95) is denied. The claims against all defendants except Clatsop County should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 7, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 22nd day of March, 2005.

_____
John Jelderks
U.S. Magistrate Judge

28 - FINDINGS AND RECOMMENDATION/ORDER